The first case we're going to hear is the State of West Virginia v. the EPA and I guess Mr. Williams will hear from you first. Well, good morning, Your Honors, and may it please the Court, Michael Williams for the State of West Virginia. In the Clean Air Act, Congress empowered states to take the lead in deciding how best to comply with the National Ambient Air Quality Standards. But in disapproving West Virginia's state implementation plan for cross-state ozone, the EPA improperly undermined West Virginia's discretion. The agency imposed a new extra-statutory presumption against state-specific flexibility in implementation plans. And EPA relied on after-the-fact modeling, modeling unavailable to West Virginia when it submitted its plan, to effectively move the goalposts. West Virginia will now face substantial, immediate, and unrecoverable costs because of EPA's unlawful disapproval. No wonder, then, that five different circuits have granted stays in similar disapprovals this year. And that's really what seems new here to me is the way those circuits and the State of West Virginia now want us to analyze these cases. It seems at odds with prior precedent in the, well, not precedent in the Fourth Circuit, but prior Fourth Circuit cases and all other prior cases before 2023. What's the difference? I think, Your Honor, there's a few differences. And I'll speak specifically to Browder because, of course, that's the decision you referenced in this court. In some of those prior actions, many of those involved SIP calls, for instance, which is more of a national action by EPA where they're applying one set standard and then saying these states don't meet that standard, therefore action follows. This is a much more state-specific action for all the various reasons that we mentioned in our brief. Go ahead. Go ahead. But in those cases, don't those cases say we look to the face of the rule and the face of the rule here appears to make it nationally applicable? So Your Honor, I think no case adopts what I think I heard EPA suggesting in the briefing that if they declare it nationally applicable or national scope that we accept that. I don't think any case prior or today has said that the court effectively defers to that. I think the cases have reasonably said that, yes, you look to the scope and effect as the rule is written. And that's exactly what West Virginia is asking you to do. What we are resisting is the notion that EPA can effectively bundle a series of unrelated actions into one federal register notice and then that way transform it into a national action. Isn't denial for violating a good neighbor provision necessarily national in scope? Well, no, Your Honor, because the disapproval is only the first step in the process. And that looks to a series of local and specific factors. If you actually look at the proposed rule that provides EPA's rationale, they're looking at West Virginia sites, they're looking at West Virginia factors, they're looking at the way in which West Virginia controls are implemented. Those are decisions that are then made by EPA regional administrators on an EPA regional docket. They explain that when they denied and disapproved the rule, you would go back to the EPA regional administrator for the rationale. So your argument is if something is regional, it should stay in the circuit where it is. But if it's national, it goes to DC circuit. Well, what the statute says, yes, is if it's either... Is the pipeline regional? I think that would depend on the nature of the project, Your Honor. Well, what if the project is confined to West Virginia and Virginia? I think in that instance, it's possible that depending on the nature of what the action is and depending on what particular regulation we're dealing with, I can imagine situations where maybe there would be a national scope or effect, and in that way it would trigger the venue provision and send that to DC. You sort of fall into the same argument being made by the EPA, which is talking about a almost suggesting that if you apply a national standard, it becomes national. Right. But the problem is every decision applies a national standard. Those are written by Congress and they're in the regulations. There are no localized rules and regulations. But if you read the venue statute, it doesn't focus on that. It focuses on the determination, and the determination has to be of national scope so that it's applicable everywhere. And the determination in this case affected only five, six states as opposed to national. This same determination would not be applicable in Colorado or in Missouri because it was localized to the eight or nine plants in West Virginia and the measurements taken in the states downstream from West Virginia. As to the legal effect? The argument has to be focused on the word determination of national scope. And the determination here, your argument has to be, was not of national scope. It was localized to the Northeast region. That's exactly right. And as to the legal effect, Your Honor, it's actually localized only to the state of West Virginia. This doesn't bind Ohio, Kentucky, or New York. I mean, there's a national standard applied, but if you look at focus on the national standard, then there is no localized. The venue doesn't have any meaning. That's exactly right, Your Honor. As we note in our briefing, we cannot conceive of a situation that wouldn't be covered by EPA's definition. It provides no limiting principle, and of course, Congress then wouldn't have provided for venue in certain circumstances for local issues. So counsel, you talked about some of the concerns West Virginia raised, and you said the extra statutory requirement that related to an alternative method, I know the argument there. Right. And you talked about the, after the fact, modeling data. Correct, Your Honor. And I understand those arguments. Does those issues seem to be issues that aren't necessarily local? In other words, those objections are things that are national, or are being done by the EPA nationally. Right. How does that affect whether or not this fits into the third venue bucket? Sure. So two things, Your Honor. One is I don't think you should limit your analysis as to what the nature of our challenge is just by reference to the state motion. So it's not as straightforward as just looking at the two points that we're using to argue for a stay and saying, are these national or local? What ultimately matters is the nature of the petition itself, and I think West Virginia has several concerns that are specific to the arbitrary and capricious nature of the action in West Virginia as to state-specific factors. But I think if you have, and I think what you're, it seems to me you have, in your position, there is a, you know, the effect is regional or local. I understand that argument. Right. And you are dealing with a lot of local specific information, like the factories, the data, the measurements, et cetera. What if you have a combined sort of issue or set of issues, some of which seem to be more national, like the, you know, extra statutory, you know, considerations and the move in the goalposts to use your language. Right. And combined with local, you know, analysis and effect. How does that work? I think what the statute suggests is that that would then stay in the local circuit because again, I think the intent behind Congress's action here was to make sure that local courts are considering local issues. So if you're raising localized regional concerns, then it would seem appropriate. Let's assume that you had no objections, no real objections to the analysis and you were just objecting to the extra statutory considerations and the new data. That was the only issue. Right. Would we be in the third bucket, venue bucket there?  And what's the purpose of that third venue bucket other than a SIP call? So it's there, it's got to mean something. Give me an example of what falls in that third bucket. And if you're talking about the nationwide scope or effect, I think the SIP call is the perfect example. Is that the only example? I think if, for instance, EPA is... I don't understand why you concede that. The reason I say that is hypothetically take a state that is not being challenged. The same standard applies, the same SIP standard applies. The only reason the determination was made in West Virginia was because it took measurements and made examinations that determined it was failing under the national standard. So you have to focus not on the national standard, you have to focus on the determination. And the determination has to be applicable nationwide. And this determination was applicable only to the circumstances involved in West Virginia and the states it implicated, which are five or six states to the east. And your honor, actually anticipated by sort of the second half of that answer, which is I'm sort of assuming that the Browner analysis where you're kind of looking to the features of the challenge is in fact relevant. You can't even raise it. The only reason the EPA can raise those issues is because there was a determination that there was a violation in West Virginia. Correct. And in fact... And if you go to a state where there was not a violation, they could not raise those issues. You're absolutely right. And if they could not raise those issues there, then the decision they made as to West Virginia was not national in scope. That would be correct, your honor. And I think you see that... Instead of making that argument, you keep suggesting that if there's a national standard applied, it makes it national. All the standards are national. Right. Let me be clear. We are not accepting the premise that if a national standard applies, that it makes it national. That is not correct. We are saying that a SIP call is a much closer question because it at least applies in a uniform fashion. But that's still the uniform aspect is the national standard. Right. But a particular state's compliance is a local decision. That is in fact correct. And I apologize. That's what I keep trying to say is that that's our actual position. That is, if it is based on state-local considerations, as they say... The statutes. All you have to do is look at the statute. Exactly. And the statute does not focus on the standard being applied. It focuses on the determination. Correct. And this state's... What this rule says is each individual state's submission was evaluated on their own merits. And that is enough for this court to say that this is a state, a local or regional action. Can you then... If that's true, is there a situation that you can tell me falls in the last venue bucket? Setting the NAC standard itself and not actually applying it to a specific state probably would be the most obvious example. Isn't that the first venue bucket? It could arguably fall in both, Your Honor. I think it just depends on the nature in which EPA implements the standard or the rule. And I think... I mean, if that's the only example, you know, we have the first part of the statute applies, we don't need the third part. I think, Your Honor, it's not beyond belief that Congress basically wanted to make sure that those very obviously clearly nationally applicable actions were sort of double protected in the sense that it could have fallen in both of those buckets. And I think a NAC standard like that, depending on the way in which EPA fashions the NAC standard, it's conceivable it could fall only in the second and not in the first. But again, that's the problem, of course, with hypotheticals. It's hard for me to write the rule on the fly up here today. I can imagine situations where they might apply it to different places in different ways, but that's... Yeah. But clearly this court does have venue because as Judge Neumar is actually helping us get to... Well, I'm not intending to. I'm just trying to direct the argument because you don't have a slam dunk here, but it seems to me we ought to start with the statute and find out what is national and what is local. And the statute basically focuses on the determination. If the determination that the EPA made is applicable to every state, then it's national. If the determination the EPA made is applicable to a region, it's local. And that's all West Virginia is asking you to do as well, is stick with the language of the statute. Whether that's true or not, that's another argument. Correct. All we are asking is the court to stick with the language of the statute. I mean, you could be arguing that they're measuring and applying the regulation incorrectly and you want to challenge the regulation or its four-step process or whatever you want to do. That would go to D.C. And apparently part of that's still in D.C. now, right? The FIP challenge is in D.C., yes, Your Honor. But as Judge Thacker noted, there is a kind of consistent body of law that exists out there. And what those courts have said is that just applying... It consists out there before this case, before 2023, before the Fifth Circuit and whatever the other circuit is. So I think maybe... Went sideways. We're conceiving of this as two separate bodies of law, I suppose, but even the older body of law, I think, did consistently suggest that you can't just say if you apply one standard that necessarily triggers the national applicability standard. Can I ask a question about the motion to stay, assuming venue is here? What is the harm to the state if the motion to stay is not granted? And where could I find support for whatever the harm is in the record? You can find support for our state harms in the record from the declarations that were submitted in support of the stay. I'd take your attention to two specifically. One is the West Virginia Department of Environmental Protection explains in their declaration that there is a permitting process that has to begin right now in order to meet the deadlines that apply in the FIP that's triggered by virtue of the SIP disapproval. They explained that permitting process involves dozens and dozens of covered entities and it's going to be a multi-year-long process that's expensive and begins right now in an agency that's already stretched thin. The Public Service Commission, likewise, again, you see a declaration from the chair of the Public Service Commission explains that they have a process for approval that they also have to undertake as to the same number of entities and that also was a year-long process that must begin right now. That's consistent with EPA's suggestion that all these implementations of these various controls... So it's cost? Is that it? Because otherwise what you're describing is they have to do their jobs. Well, Your Honor, cost... That can't be harm. It is harm, Your Honor, when it imposes unrecoverable costs on the state. This court... So it is cost. That is one aspect. There's also an injury to state sovereignty, Your Honor, that the court can't dismiss in that this statute was specifically designed to give West Virginia the discretion... I mean, your damage to sovereignty is no more intensive to time than the damage to the environment. Respectfully, Your Honor... EPA's basically saying that without implementation, there's an ongoing environmental issue. I think your argument has to be something that's irredeemable, which would be you have to start engaging and complying with the order and expending money and resources when it may not be necessary. That is, in fact, point A. That can only be... Yes. That's point A. That is what is directly addressed by the declaration. And the state sovereignty can be... Is that really irreparable? I mean, if you went on the... If the court validates your position, I mean, on the state sovereignty standpoint, it seems like a favorable subsequent decision effectively rectifies that situation. I don't think it does, Your Honor, in the sense that we have to begin taking action that the federal government... Well, that's a different issue. Right. I mean, yeah. I mean, the actual tangible stuff is one thing, but the kind of more philosophical sovereignty issue gets, if you're right, corrected on appeal or... I mean, if the EPA takes away half your sovereignty and the Supreme Court comes back two years later and says, you have full sovereignty, and as a matter of fact, you have more. Right. You haven't been injured. I think these issues are bound up, Your Honor. I think there's an injury in terms of dollars and cents, DEP is going to have to hire somebody to look at these permits. But there is also an injury in that our state is going to be diverting its attention and its sovereign power to implementing improperly imposed federal requirements. I think they're sort of necessarily linked to one another. Can I do another thing on the state? I think I'm right on this, that the EPA certainly uses the subsequent data in its disapproval but I think it also says that it would disapprove under the 2011 data. So I think, Your Honor, what it actually says is that it starts with the 2016 version 2. Right. And then it says, well, the 2016 version 1 gets us to similar results, so therefore we would have similar concerns. But what they're using the 2016 data for, it shows different receptor sites that are whether any control should be implemented. And so West Virginia assumed a body of information and made decisions based on that body of information. And then EPA is just coming in and saying, well, this later stuff is close enough, but then we're going to look at different receptor sites and we're going to look at different controls that are driven by those receptor sites. So two follow-ups, just kind of hypothetically, if they had clearly said, all right, we disapprove under 2011 data, the way y'all proposed yourself, is insufficient, doesn't comply. But we really should also be looking at this with more recent data. If you had kind of an alternative analysis, would that, how would that relate to the, it seems like that would undermine your stay. So, your honor, I think it would, that would create a much closer question on the second aspect of the stay motion, but it wouldn't cure the first. Because the first argument is that they started with this strict structure that had never been imposed before, and more importantly, isn't imposed by the text of the statute. And so their use of 2016 version 1 modeling, as I said, would have cured the goal post problem, but it wouldn't impose the problem that they've imposed extra statutory requirements. On the use of the later years data, I'll ask them the same question, but if they had come in and said, look, we got new data, it's better for everyone to use new data versus older data, here's some time to consider it, would there be any problem with that? Again, I think that would be a much closer question if they had sort of restarted the process for allowing. What could be wrong with that? Well, I think it depends on the nature of allowing for comment. I think that's how you put it. If they actually allowed West Virginia to resubmit an entire SIP plan that accounted for all that new data and go through that whole process again, then maybe that's not as problematic. But if they try to do this truncated thing where they say, we're going to put some data out there and we're going to use this and you're going to have a couple months to comment on it, that's not sufficient. That doesn't allow for the amount of discretion that the Clean Air Act contemplates. All right. Thank you. You have some rebuttal. Okay. Mr. Hardy. May it please the court, my name is Alex Hardy on behalf of the United States. With me at council table are Rosemary Caban and Daniel Schramm of the U.S. Environmental Protection Agency. I'll explain why the court should grant EPA's motion to transfer, which turns on the venue provision in section 307, and why the court should not grant West Virginia's motion to transfer. The motion is all for the safe factors favor EPA. Yeah. The disapproval EPA published here is nationally applicable because it covers 21 states. It's not limited to West Virginia. Ozone and its precursors. Why is it applicable? Give me a state where there is no determination made. For instance, is Illinois subject to your federal register? Illinois was subject to it, yes. What state is not? Nebraska? There was, Nebraska was not subject to this rule. Okay. So now, the ruling that you made with respect to West Virginia would not be applicable to Nebraska. Your Honor, this court... And the reason is because they have different plans, they have different plans, they have different measurements, and here the measurements were made in Connecticut, Massachusetts, New York, New Jersey, Pennsylvania, Maryland, and that would not be applicable. The determination made here was based on collection of data and application of a plan in West Virginia, and it applied regionally. And your holding, your determination, decision, only affected West Virginia, and it's directed at West Virginia. It's not directed at Nebraska. On the other hand, if you come in and start saying we want new data, or you have to apply this or that, that's going to apply to every state in the country, and they're going to have to comply. But in this case, the determination was unique to West Virginia, and no other state is affected by it. None of the other states that were listed in the Federal Register. I don't know how many states you had, 27 or whatever it is. Your Honor, there certainly were determinations that EPA made here that were unique to West Virginia. There were also determinations that were based, that were nationwide in scope and effect. Well, it's pretty important because West Virginia is going to have to dedicate its agencies to complying with your order, where Nebraska is not. And so there has to be a distinction between what happens in Nebraska and what happens in West Virginia. And in this case, the only reason you're bringing it in West Virginia, or you're bringing West Virginia to heel, is because they are not implementing a state plan according to what you believe is the correct method, and that's because actual measurements have been taken. Actual investigation, localized investigation, when I say localized, I mean the whole region up to East Coast, has supported your determination. But my whole point is the venue statute does not focus on the standard being applied. The venue statute focuses on the scope of the determination, the decision, and the scope of the decision here was applicable only to West Virginia. Your Honor, respectfully, the venue statute refers to the applicability of the action. Whether an action is nationally applicable or not is determined from the face of the rule. No case has ever... Fair enough. I don't care what word you want to pick, but the determination has to be applicable elsewhere, and it's not applicable to Nebraska. Okay. One point I'd like to make is that there's no case that's ever held that to be nationally applicable, an agency action has to apply to all 50 states. This court has previously held that a SIP call affecting 22 states addressing a pollution problem that in this court's words is interrelated... Well, the statute, you know, it doesn't matter what happened in the past historically, because the statute says you get D.C. venue if the determination is of national scope, the determination, and the determination is the decision you made, the action you took against West Virginia, and that is not of national scope. You have limited it to West Virginia, and even the other states that you have included in the Federal Register have different reasons for applying it, and then there are 23 states to which it doesn't apply at all. Your Honor, if I could respectfully parse the statute at a little more granular level. An action belongs in the D.C. Circuit, and the point of this venue provision in the Clean Air Act, which is very unique, quite unlike other venue provisions such as 28 U.S.C. 1391, where venue is based on the residence of a plaintiff or where the cause of action arose. Here Congress expressed a clear preference to centralize review of national issues. One way that it can be a national issue... See how you make that statement, because the very first venue, it says which is locally or regionally applicable. It makes a venue in the local court of appeals, and then it's got this District of Columbia venue provision, if the determination is of national scope. In other words, if the determination is decision or action or whatever you want to call it, but the statute uses the word determination. And if the determination has national scope, D.C. gets it. The determination here applies only to West Virginia. Your Honor, that part of the statute which says that locally or regionally applicable actions are challengeable in the regional circuit... No, I'm going to the third one. Well, the third one is part of the second one. An action is challengeable in a regional circuit if it's locally or regionally applicable, but if it's locally or regionally applicable and based on a determination of nationwide scope or effect, then review is proper in the D.C. circuit. Every SIP is in some respect dealing with a national standard. So that can't be... Just because there's a national standard can't be the reason, because then every single SIP deals with a national standard. The question is whether what you said about West Virginia is national in scope. And other than borrowing the same standard and clipping it together with some others, I'm trying hard to understand how this one does that. Your Honor, if I could give a specific example that I think will help elucidate this point. When EPA received submissions from across the country, good neighbor SIP submissions, there were many states that argued that they were not linked to downwind receptors because of the contributions of international emissions, emissions from Canada and Mexico. Many of those states argued that that essentially eliminated their linkages or discounted those linkages. EPA made a determination for Arkansas, California, Indiana, Michigan, Illinois, Kentucky, Missouri, Ohio, Utah, and Wyoming that because ozone pollution is a collective contribution problem, the standard for linkage is contribution, not but for causation. And the presence of an international contribution did not eliminate a linkage that otherwise existed. That is a determination of nationwide scope or effect. Even if your Honors... state SIP, it's saying, okay, here's how we're going to apply this national standard. But then you've got to go apply the standard. And that's when you apply the standard, you have the effect of what you're doing. And it seems like the effect is the action and the action is local. Your Honor, case law from across the country has made it very clear that the standard for SIP is based on a challenge to it. It's of course true that any federal decision will have localized effects. If the Federal Reserve raises interest rates, that has effects on local banks. And any SIP is going to have local... That's the national standard, the interest rates raised for the country. If you change the SIP standard and it was being challenged, that's national, it'll go to D.C. But when you have an existing national standard and apply it to a particular state and say state one, you're compliant, state two, you're not, the determination as to state one is local because you have said that particular state, your determination is that state is not in compliance and the implicit is that state two is in compliance. That's a local decision. Your Honor, every determination EPA made, every decision it made was of course based on the merits of the submissions that it received. But it did so in a national way and as this court has previously held... Well, that now you're basically saying it's applying a national standard. Of course, then the venue provision is just written out because every decision applies a national standard. I'm not saying, Your Honor, that the standard, the national ambient air quality standard applies across the country and that's what makes this a nationally applicable action. Well, that's what you're arguing. No, Your Honor, I'm arguing that this action affected 21 states covering roughly two-thirds of the geographic area. For different reasons. Every state is being charged for a different reason, different measurements, different plants, different downstream effects. You have gone to West Virginia, there are what, eight or nine plants subject to consideration. There are measurements taken in West Virginia. There are downwind measurements being taken in the other states to see how much ozone or nitrogen goes downstream. It's all linked to a particular emissions from West Virginia. And so, you addressed West Virginia and said you're not complying with your state plan because this is what's happening. That is a local determination. There were local determinations involved. That's absolutely true. EPA doesn't see that. Well, then those determinations are being challenged. The third prong of the... Is it a singular common denominator that makes this national? Is the fact that ozone travels across state lines? That is the pollution problem that is the predicate for the agency's common analytical framework that it used in evaluating every SIF it received. That's the basis for the agency's four-step framework in determining how to attack that problem. This court has previously held that a coordinated attempt to attack an interrelated pollution problem affecting 22 states is nationally applicable. And even if your honors didn't agree that it was nationally applicable, it's locally or regionally applicable instead, still, the agency's action rested on multiple determinations of nationwide scope or effect. As I previously mentioned, its determination as to the contribution of international emissions was one of those determinations. There are many others. The use of 2023 as an analytic year for the modeling was such a determination. The choice or the decision that the agency made that relying on a previous federal rule, the cross-state air pollution rule update, was not an adequate substitute for an analysis of significant contribution at step three. That's another determination that had nationwide scope or effect that the agency relied on in coming to its decision. Counsel, can I interrupt you and switch gears a little bit? Yes, sir. I know we've been talking about the venue. I want to ask a state-related question. Obviously, there are several factors there, but when the EPA was so late in responding to the SIP, how can it say its interests are such that it opposes a state? You got a year. You took almost two years or maybe more than two years. It seems to me it's pretty hard to say timing is important to you given that delay. The agency is only saying that a state should not be entered here because it would delay attainment of the National Indian Air Quality Standards. I understand that, but if we're having to grapple with who's right and who's wrong, the question is, does it go into effect immediately? I'm trying to see what the opposition is to a state when you've already blown your statutory deadline by so much. The statutory deadline was not met in this case. The agency was devoting significant amounts of resources to complying with a remand in the Wisconsin decision. That delay that was essentially a result of strained resources at the agency is no reason for granting an extraordinary remedy of sustaining the disapproval of the state plan pending judicial review. So, you're saying because you had to respond to another court decision that that justifies missing the deadline by over a year? Respectfully, Your Honor, the state factors are likelihood of success on the merits, irreparable harm, balance of equities and public interest, and each of those factors, regardless of the delay in acting on West Virginia's sub-submission, favor the agency. West Virginia is unlikely to succeed on the merits because it hasn't shown any deficiencies in the determination EPA made as to its state plan. And if I could elaborate on that a little bit, starting with their, I realize I'm close to out of time, but they have alleged that EPA has only a limited review to begin with in reviewing SIP submissions and must defer to a state's choices, and that's the basis for their argument in the irreparable harm that there's a harm to their sovereign interests. And I want to emphasize that EPA has actually a critical role in evaluating SIPs and ensuring that they comply with the Clean Air Act. This court has previously held that as well in the Virginia v. Browner case. And EPA's role is particularly important in this context that I emphasized earlier. It's not a state making choices about how to comply with the National Ambient Air Quality Standards in its own territory. It's about a collective contribution problem where West Virginia's emissions are leading to nonattainment in other states. So it's, that's the whole point of the good neighbor provision. And the Supreme Court has held that that requires an allocation of responsibility among upwind states for downwind pollution. Federal courts, case law is held, are at their most deferential to the agency where its decision evaluates complex scientific data within its technical expertise. And EPA did that here, and it explained its decision in great detail. I realize I'm over time, your honors, and I'll save the rest of my argument for rebuttal. Thank you. All right. Mr. Williams. So two things on venue, your honor. One is, I heard again that this, this repeated suggestion that a national standard or a national action therefore renders EPA's decision national. And I heard reference to the unpublished and therefore unscindable decision of this court in West Virginia Chamber. But 1,000 Friends of Maryland v. Browner is a published decision of this court that made very clear that it's not an action, a national action, merely because it stems from the use of EPA national regulations. When an action goes to the application of those national standards to local circumstances, it therefore becomes a local action. I also heard reference to the spillover effects or this ozone traveling across borders concept. And I think the court recognizes the problem that that doesn't provide a meaningful limiting principle. But it also goes to the problem that the D.C. Circuit identified in the Dalton Trucking decision just recently, where EPA there made an argument that an action that was focused on California affected persons outside the state and therefore could have been deemed one that was sort of more than local or national. And the court deemed that a, quote, transparent slight of hand that did not affect its jurisdiction or its venue analysis in deeming it a local or regional action. I think that's very similar to the argument that you're hearing here, where the specific states that are affected are somehow reaching across all these other states because of the nature of ozone. Courts have not accepted that argument. Now, moving to the stay argument, I think the court has honed in on what one of the principal problems with EPA's sort of equities argument really is, which is that West Virginia has presented you with concrete, hard evidence that we will suffer actual specific harms to our agencies, our sovereignty, what have you. And the agency responds with saying, we need to implement these ozone regulations immediately. There's two big points in response to that, Your Honor. One is simply that they took two and a half years to implement these regulations. So a short delay of a few months for this court to give a comprehensive review like this, meaningful review. Well, the ozone problem, you know, goes back more than three years. The ozone problem is a problem, I guess it begins with emission of nitrogen oxide or whatever. And that's been going on for years and years. And we're not going to open and close the door on that. We're trying to improve ourselves on it and do better. And that's our whole effort here. We're facing air that comes from all around the world in some sense. But we're making our contribution by policing our smokestacks and our plants for their emissions and going to improve it. So every delay is a delay in that improvement. But the question is, why is it so immediate as to require a state to begin its administrative process when the state believes it has a chance to stick with its own position on this? I don't know where the merits lie on here, the likelihood of success. I think that's a very complex question. But what's before us now really is the balance of the harms. I think that's right, Your Honor. And I think we have to keep in mind the nature of how these controls come into place. It's not as though if we start implementing controls that we can take them back. Once the train starts going down the track, it's hard to pull it back. I mean, we see this in prior EPA actions. The Clean Power Plan, for instance, when that plan was first proposed, regulated industries, power plants started implementing controls immediately because they felt compelled to. And even though that plan was ultimately deemed unlawful, they ended up implementing controls that cost millions and maybe hundreds of millions of dollars because they felt compelled by the timing of the circumstances. How many plants are involved? Nine, eight, or nine? If we're talking about EGUs, Your Honor, I believe it's, yes, I think it's eight. But I also want to keep in mind that this rule governs more than just EGUs. It also covers dozens of non-EGU facilities. That's part of what imposes the burden. What kind of facilities? Sorry, non-electric generating unit facilities. So more than just power plants. Does their action affect more than the eight or nine plants? Absolutely, Your Honor. As you see in the declaration of the PSC commissioner, for instance, and from the declaration of DEP, the permitting requirements and the like are going to stretch well beyond just power plants. There's going to be dozens of other facilities that are also subject to these regulations. So it's more than just the fact that MonPower, for instance, is going to pay tens of millions of dollars for controls. It's also that all these other folks who maybe aren't typically embroiled in the everyday phenomenon of EPA regulation are now going to have to be involved in that multi-year long process as well. That's going to take our time and attention as the state. So that's the immediate harm, Your Honor. I see I have 15 seconds. So I'll just say, for all these reasons, we would say that this court does, in fact, and this court should, in fact, enter a stay so that these harms can be avoided. Thank you, Your Honor. All right. I think, Mr. Hardy, you have some further time. Your Honor, I'd like to begin by just making an analogy to two other EPA actions that there's more case law and some disapprovals. Your Honor, as we were focusing earlier on whether the agency's decision uses local factors, non-attainment designations also use local factors in deciding whether an area is in or out. I don't think that's the issue either. I don't know why you ducked the statute, but the statute says it has to be a determination of national scope or determination of local. In other words, the determination that you made, the decision that the EPA made, only directs West Virginia to correct what it's doing. It does not apply anywhere else. And that, to me, I don't know how you answer that. You're applying a national standard, sure, but that isn't what the venue statute says. Your Honor, the only national standard that's being invoked is the disapproval. There's no other national standard. Sure there is. There's the whole act of ozone. There are a number of emissions, allowable emissions of nitrogen oxide and measurements being taken in the other states. Those are all established by national standards. The question is, when you apply those standards in a particular state so that state A is found to violate and state B is found not to violate, then that, to me, is a decision that is focusing on state A. Your Honor, this is analogous in every meaningful way to SIP calls, where there's case law that holds that a SIP call effect deciding whether a given state SIP does or does not comply with the Clean Air Act. Well, it depends on that action, because if you're challenging the standard, the SIP standard, that's a national standard, and that challenge would go to the D.C. Circuit. That has national scope. If one state challenges a SIP standard or interpretation, that will affect every other state, and that should go to D.C. But if you have a standard that's established and they're not challenging the parts per million of the nitrogen and all that stuff, what they're challenging is whether they have a national standard. Your Honor, the case law is uniform, that the basis of the inquiry is the nature of the action the agency took. EPA did not take action. The final agency action being challenged applies to 21 states. It didn't take action. Of course, you focus on the action, but you have to look at the nature of the action, what the decision was made by the agency.  It's a national scope. But if the scope of the action is to say a national standard has been violated in this particular state, that's local in scope. So you can't just say generally the action. You have to look at whether the determination is one of national scope. Your Honor, non-attainment designations and SIP calls are both examples where there's not a change to a national standard. It's a determination whether given areas comply with the national standard or not. When you say a given area, that implies locality. So in Texas 2011, a case that involved a SIP call, the Fifth Circuit decided that that challenge brought by the state of Texas to a SIP call affecting 13 far-flung states, in the Court's words, belonged to the D.C. Circuit because it was nationally applicable. In West Virginia Chamber of Commerce, this Court held that a SIP call affecting 22 states belonged to the D.C. Circuit because it was nationally applicable. It affected slightly less than half the states, in the Court's words. So these are both examples where there is a national standard. EPA is deciding whether states comply with the standard and making a coordinated determination as to those states. It seems to me we've got to look at, I mean, you can use SIP calls generally. You can use something generally. It seems to me we've got to be specific and look and see what's going on in a particular situation. I mean, if someone were to say, if EPA were to say, okay, say this and this alone, you know, you've got to go about your SIPs this way. You know, national standard is X. Here's how you do it. You know, and there was no then application of that to the local thing. Yeah, maybe we'd look at that a little bit. Maybe that's different. But, yeah, the fact that you, you know, here you may have an element of that. You're talking, I get, about like using new data. I was asking, you know, Mr. Williams that. But then you're going on and you're doing this very local stuff, you know, where you're analyzing it. And the effect then becomes, you know, an effect that's unique to each of the states where their data is applied. Not just here's how you do it, even though that may be part of what you're doing. Your Honor, that's absolutely true. Using state-specific data was a critical component of what EPA did here. I think it's important to note that whether a, if conceding for the sake of argument that the action was locally or regionally applicable and deciding whether it was based on a determination of nationwide scope or effect, the statute does not say based only on a determination of nationwide scope or effect. I think it's, there's an acknowledgement that when an action is locally or regionally applicable to begin with, of course it's relying on some local or regional factors. But Congress had an intent to centralize a review even of those cases where the agency's decision was based on a determination of nationwide scope or effect. And here I've given several examples. Under your argument then, there is nothing local. Because under your argument, you're enforcing practices, regulations, and standards, congressional standards to states. And because these are all nationally established and uniform, every single time you challenge a state, it's going to be national in scope under your standard. Your Honor, if I could give a couple of examples of something that would absolutely be local. In the American Road and Transportation Builders case, that's the case where the D.C. Circuit held that a SIP action is prototypically local or regional. In that case, EPA had approved a SIP in California. An industry group was challenging EPA's approval in the D.C. Circuit. The D.C. Circuit correctly concluded that that was a locally or regionally applicable decision, the approval of the SIP, and it belonged in the regional circuit, the 9th Circuit. And EPA agreed with that decision. Another example from more recently is some of EPA's approvals from this action were locally or regionally applicable. For instance, EPA approved Colorado's state implementation plan. EPA approved Colorado's good neighbor state implementation plan. That was challenged by organizations in the 10th Circuit. EPA conceded that it was a locally or regionally applicable action. So the agency is not misusing or abusing this provision. Well, maybe it depends on which lawyer is arguing the case. Because what you described in Colorado seems to be what's happening here. Well, you just went the other way. Well, that action applied to Colorado. It did not apply to West Virginia. This action applied to 22 states, Your Honor. I mean, it didn't. The actual application of the standards applied only to West Virginia. I mean, true, y'all published it together. But if you assume that the action that applied for West Virginia is local, it can't become national in scope because you put it together with a bunch of things and clip it together and say, OK, I got a bunch. They're national. Your Honor, it wasn't just bundled with unrelated actions. The agency relied on a common framework in coming into its determination. As I mentioned earlier, it made a determination that many states citing international emissions as a basis to discount linkages was not legitimate. It made a determination that many states citing their compliance with the cross-state air pollution rule update. Tell me about the action here in this case in particular. What did you tell West Virginia? That you told West Virginia that its state plan was inadequate, right? That's well, along with 21, along with 20. No, I've said I'm talking about this particular situation involving West Virginia. In this case, Your Honor, West Virginia was demonstrated to be. I'm asking you what you determined. EPA determined there were linkages to downwind receptors at every iteration of modeling. In fact, the same receptor in Fairfield, Connecticut, was linked at every iteration of modeling, including 2011 based model. So what did you conclude? The EPA concluded. What the agency concluded was that those linkages necessitated further analysis of potential cost effective emissions reduction. In a particular state in West Virginia, right? You did not attribute them to Illinois. You did not attribute them to Missouri. You attributed to West Virginia. The particular emissions reduction. Yes, Your Honor. And that's what you were challenging. And you found it in West Virginia. You didn't say Connecticut's insufficient or Maryland's insufficient. You said West Virginia is insufficient in as much as it created downstream pollution. EPA said some states have submitted approval plans. 21 states have not submitted approval plans for very much the same reason. Using a common framework to analyze those plans and making determinations of nationwide scope or effect. Well, if the standard is being challenged, that belongs in D.C. In other words, if what you're talking about is that you are interpreting your standard different than the states are as a uniform basis, that belongs in D.C. But as I understand the action here, you're addressing, in particular, the deficiency of West Virginia's plan and modeling. And they're going to have to change that. Concluding that only a change to a national standard, such as a national ambient air quality standard, including that's the only thing that belongs in D.C., I think ignores the case law where nonattainment designations that affect a large portion of the country. I guess you don't like to go back to the statute. You haven't quoted it once. But the statute says a determination of national or determination of local or regional. Your Honor, respectfully, I have quoted the statute. And otherwise locally or regionally applicable action belongs in a challenge to action belongs in the D.C. Circuit if it is based on a determination of nationwide scope or effect. A determination. That's a decision. That's a national scope. And when you make a determination that a particular model in a state is deficient, that is unique to that state because that state failed to do it. The state of Nebraska didn't fail to do it or the state of Y didn't fail to do it. And it seems to me that's a big distinction, don't you think? I don't think so. I think the commonalities. If I could discuss the state factors in very brief time, I would appreciate the opportunity to do that. Otherwise, take a minute. As I mentioned earlier, EPA correctly disapproved the SIP. And West Virginia is unlikely to succeed on the merits. Because as I mentioned, the modeling, every iteration showed a linkage to the same downwind receptor. That necessitated further analysis of potential cost effective emissions reductions. West Virginia cited some reductions that were happening in the state. But it didn't show how that would make their contribution non-significant. Not significant. And EPA concluded the plan was not approvable on that basis. And that well surpasses the APA arbitrary and capricious standard of review in this case. On irreparable harm, the harms that West Virginia has alleged are from having to evaluate permit applications from the affected facilities. I want to emphasize that the electrical generating units and their parent companies are not parties to this case and have not intervened in this case. States fulfilling their typical permitting obligations is not an irreparable injury. And it would be inconsistent with the court's treatment of equitable relief as an extraordinary remedy to grant a stay based on the state just having to evaluate permit applications as a result of the federal plan, which is being litigated separately in the D.C. Circuit. The balance of equities and public interest also weigh against the stay because attainment of the NAAQS will greatly improve public health in downwind areas. And West Virginia hasn't shown that the irreparable harms it alleges balance the equities in its favor. Thank you. Thank you. We'll come down and greet counsel and then proceed on to our last case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.